Juan v. Luis Olivares, etc. et al. Good morning. My name is Claudio Oliva and I am on behalf of the appellants in this case. And we are here on an interlocutory appeal from a denial of a qualified immunity defense to the defendants raised at the summary judgment stage of the litigation. I want to point out that not all the defendants are here appealing the denial of the qualified immunity defense, but just the members of the governing board of the Head Start program of Mayaguez, and that the only issue that remained pending in the lower court is the due process violation of the plaintiff, appellee in this case. The issue on appeal is that even under the appellee's own version of the facts and the uncontested facts established by the court, appellants are entitled to a qualified immunity defense because their conduct was not the causing fact of the constitutional deprivation that she claims. Is it a fair reading of the district court's decision not to grant qualified immunity that the district court thought that fleshing out the facts would render a more informed decision on the issue? In other words, if we affirm what the district court has done, you will not have lost the opportunity to flesh out the facts and prove why your client is indeed entitled to qualified immunity. We understand that we have not waived the right to raise that qualified immunity defense against during trial at the trial stage. However, I think that the purpose of the qualified immunity is in fact to protect the public officials from having to engage in the process of litigating a case when they are not responsible for the conduct for which this litigation has started. In this case, the facts are sufficient to put the court in the position to ascertain that the appellants in this case did not engage in any conduct that could have raised to the level of a deprivation of a constitutional right or a protected interest under the United States Constitution. What we have here is what? We have members of an administrative structure within a federal program, which is the Head Start program, that under the law have limited authorities and prerogatives for the program, and we have then the employer, who is the municipality and the mayor. The appellants, as members of this administrative structure, render a decision just to separate, remove the appellee from the position of director of Head Start, which is a municipal career position in the municipality of Maya West. So they are not the nominating authority of this person. They are not the ones called to either terminate or remove this person. As you see, the September 12th letter does not command an action by the mayor. They suggest this action, and they ask the mayor to act. Why? Because under Puerto Rico law, it is the mayor who is the ultimate person with the decision-making authority to terminate or to transfer municipal employees. For this reason, I refer this court to Puerto Rico law as annotated, Title 21, Section 4109, Subsection 0, and Puerto Rico law as annotated, Title 21, Section 4559. How was Ms. Faldo informed that she was being removed? Through the mayor, in a letter of September 28th, which is issued and signed by the mayor after the appellants request the removal of this lady from the Head Start program as a director. Did not the letter say that this was based on a decision reached by the program's governing board? But that doesn't, that doesn't make Can we start with a yes or no? Well, yes, Your Honor. The letter states that. That's correct. Your position is that the members of the governing board had nothing to do with her removal? Well, yes, they do. But the problem, the issue is that based on the scenario, the legal scenario, they could not know that their conduct would end up in depriving this person of her right to due process. We're not saying that it might have led to her termination, but the issue here is not her termination. It's the deprivation of her due process of right, the due process of law right to protect her interest in continued employment. That's the issue here. Under Puerto Rico law, when do you normally get the hearing right? Before the termination. Whose responsibility? After the governing board acts, usually? Yeah, sure. Sure. Who decides whether to trigger the procedures? The mayor, the mayor, because he's the nominating authority. In fact, if if we go to CONTNUAR versus University of Hawaii. Before you go into this, I understand your position is what with respect to what the district court decided. Did the district court address this issue in your view? No, not at all. It's totally disregarded. So what so what would you like us to do, vacate and remand for the district court to consider it? No, I think I think that I think that this court is in the position to decide on the novel standard. The granting of the qualified immunity to the appellants without having to remand this case to the district court. Why wouldn't we remand it to the district court? Because one of the issues is, just as Judge Hawkins was saying, suppose the district court was of the view that to actually figure out this issue, there are factual issues in play, then we couldn't decide it on interlocutory appeal. So it seems odd for us to just jump the gun and decide the question about whether this is a pure legal question before we've even given the chance for the district court to weigh in on whether it perceives there to be factual issues in play. We very respectfully differ from the from the view that the district court considered that there were issues of fact that had to be sorted out at the trial level or the trial stage. I understand that. But what I'm saying, I thought you were saying the district court didn't address the issue at all. Well, the fact that the legal issue. Well, the facts are there. Did it address? It just doesn't mention it, the involvement theory that you're addressing. It only says there was no protected rights. It just dismissed that argument completely. It didn't even discuss it. No. Right. So since it didn't discuss it, we can't really know whether it perceived there to be a factual question there or not. Because it didn't discuss it at all. So wouldn't that suggest, since we're not supposed to take issues that the district court perceives to have a factual component, that the right thing to do would be to vacate and remand and let the district court let us know how it sees the issue. But the point is that the district court had an obligation to address the qualified immunity defense. Which is why we would vacate and remand. Then there would be the adequate process to follow by this honorable court. Yes. But going back, I think that the facts as they are present are clear enough to find that the qualified immunity defense would have been a proper remedy to grant to the appellants because of the stages in which the steps took place. Again, we have this group who has the authority to supervise and recommend matters regarded to personnel issues of the Head Start program. But they don't have the authority, not the responsibility. Did the September 28, 2011 letter to Ms. Falto tell her that the board had recommended her removal? No, it says that it was their decision to remove her. But the fact is that the board, even if that's what the letter conveys, it was knowledge that the board had at the time they took that action, which is the relevant issue here. And at the time they took that, they issued that letter and took that decision, there was no reasonable basis for them to think that they were inviting or instructing the mayor to deprive appellee of her property interest without a due process because they did not have that authority within the legal structures existing at the time they took that action. You mean to say even if we posited that they had the understanding that she would be fired, which I know maybe you don't agree with, but even if we thought that, what they lacked was an understanding that she would be fired without following the procedural protections. There's no way they could know that at that time. Certainly, and their letter doesn't suggest that, and nothing in the record suggests that they could have had that knowledge or anticipate that that would be the end result of their actions. Because, again, under the law, it is the mayor who had the responsibility to receive the recommendation and then act upon it following the Puerto Rico law, which requires that before the mayor terminates any career employee, that employee is granted notice and hearing. Does the September 28th letter inform Ms. Falto that only the mayor can remove her? No, but it's the only person who signs the letter because it's the only person with the real authority to do it. You and I are going to get along a whole lot better if you answer my questions with a yes or no if you can. So the letter did not tell her that only the mayor could fire her? No, Your Honor. It doesn't say it. Did the letter tell her that she was entitled to a due process hearing? Yes or no. Yes or no. Yes, a post-termination hearing because it addresses her and directs her to file an appeal of that decision before an appeal board, but it's not a pre-termination hearing. Okay. Thank you. Thank you, Your Honor. Can I ask you one more question? I apologize. Sure. Did you raise this issue about involvement below in the district? Oh, certainly. It was briefed at the appeal. I refer the court to page 81 of the appendix, pages 189 through 180 of the appendix, and pages 237 through 238 of the appendix. Thank you. Thank you, Your Honor. Good morning, Your Honor. Good morning. On behalf of Plaintiff Apeliz. Your Honor, I would like to begin by addressing what the counsel has stated, that the appellants didn't have the authority to dismiss plaintiffs, and that what they only did was recommend that action to the mayor. I would call attention of this court to appendix 9, which is the September 12th letter, and this is what the governing board and the regulatory policy council tells the mayor. Let me quote. Therefore, the governing board and the regulatory policy council, in accordance with the governing law of the Head Start program standard 1304.50, have made a decision to remove effective as of Friday, September 16th, Ms. Elba Falto. The question that I have is, is that a reflection of the actual law? Does the actual law give them that authority? Yes, Your Honor. We believe so, and we're going to quote from 42 U.S.C. 9837. The board of directors, as well as the policy council, are the principals that according to the law show the responsibility of personal public, including personal policy, including determination of the executive director. They have the responsibility to approve the procedure for determination of the executive director. Well, if that's the way the law reads, it leaves some questions in my mind. Determine the procedure. My question is, does that give them the authority to hire fire people? Or this particular position, I should say. Your Honor, they have the authority to hire, and as we read the law. Who hired this position? Pardon me? Who was the official who actually hired? Ms. Falto, the mayor. All right. That would seem to indicate to me that usually a person who hires is also the person who fires. Yes, Your Honor, but in this particular case, it's our contention that they both share the same responsibility. And if you allow me to quote from the dismissal letter, what the mayor says is, I hereby adopt the decision of both governing board and duly notify you that effective October 5, you shall cease to hold office as director of the Head Start program. But if she was already fired by the board of directors, basically the mayor was just doing an action that didn't have any legal effect. Yes, Your Honor, but the mayor didn't appeal the judgment against him as to the violation of the due process. Now, the governing board and the policy councils are the ones that are appealing, saying that they have nothing to do, merely, not exactly nothing. But when I say, well, we don't have that much involvement, we don't have any authority, and the fact is that the ones that trigger the whole procedure was the governing board and the policy council. But you concede she can't be fired without the mayor's say-so. We should say... Yes? Yes. So you're just saying that a necessary actor is the governing board, but they're not sufficient to fire her. Right. Okay, so them being necessary but not sufficient. Once the governing board acts, can we tell from this record who decides what procedure she's entitled to? Yes, Your Honor, because the procedure that she's entitled is governed by the laws of Puerto Rico. She's a career employee, and therefore she has all the right of due process of career employees. Right, so the governing board acts. She can't be terminated until the mayor signs off on it. Mm-hmm. Okay? When does she get the hearing right, in your view? In my view, she gets the hearing right as soon as she's informed that they have the intention to dismiss her. Who's the they? And they say... Who's the they?  It could be the governing board, the policy council, or even the mayor. So if it could be as late as the mayor, then that would mean when the governing board says, we think she should be fired, it's not saying anything about what procedure she should get. You've got to wait until the mayor weighs in. And if that's right, then it would seem like there's a pretty good argument that maybe they're entitled to qualified immunity. Yes, Your Honor, but the thing is that the governing board didn't say, we think that she should be fired, or we recommend to you, Mayor... I'm not asking that. I'm wanting to know, on your position, your theory of the case, when assuming the governing board wants her fired, says, we think she should be fired, you've already said that does not amount to her being fired because the mayor has to sign off. Correct? Yes, Your Honor. Okay, so since the mayor has to sign off, at what point is she entitled to procedural protection? As soon as whatever governing board or person with whatever authority has begins a procedure that ends in her termination. Because she has the right that that board that is going to make not a recommendation, as it's been stated here, a decision was made, they should have her side of the story. And that never happened. And the district court didn't say word one on this issue in its opinion, right? No, Your Honor, they didn't say word one. Is there any reason for... Because they simply deny defendants a petition that is limited to a qualified immunity. The only thing that the district court said is at this stage, you are not entitled to qualified immunity. But since they also raised below this involvement issue, is there any reason not to have the district court told that it should at least consider this qualified immunity question? Yes, Your Honor, but that has not been asked, not even to this court, not other district court. They didn't raise that issue here. Well, they briefed the whole issue of involvement. They have briefed the whole issue of involvement under the frame of a qualified immunity. Yeah, but their argument is because they weren't involved, they're entitled to qualified immunity. The district court never ruled on that question. And I guess my question to you is why shouldn't we have the district court rule on it? Well, Your Honor, because my contention is that, as it was stated by one of you before, that's an issue that still can be raised at the district level. They haven't renounced that. So if we had a case where the board or the council makes a recommendation to the mayor, and the mayor says, well, I'm going to consider this, and I'm going to hear her side of the story. Well, that's not what happened here. The board and the council make a final determination to dismiss her. And what the mayor did is, well, they decided that, not me, they decided that, and what I'm doing is adopting the decision of the board and of the government, of the governing board. That's the facts of this case. I mean, both ways are wrong. Because she's a legal employee, and she has a right to have her side of the story heard before they take a determination to dismiss her, either of the boards or the mayor. Yes, Your Honor? Could the mayor terminate Espaldo without the recommendation of the board? From my point of view, Your Honor, from my reading of the law, I believe that the mayors needed the recommendation of the governing board and of the policy council before taking a decision of terminating Ms. Espaldo. Because they are the ones that, in the first instance, have the authority to establish all the policy as to the employees of the Head Start program. So the mayor is only the dominating authority of all the employees, but here we have a dependence or a branch of the government that has a governing board and has a policy council that has to do with the dismissal of employees. If there's another question? Thank you.